UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JANE DOE,

                    Plaintiff,

                                                    Civil Action No.:

          -against-

NEW YORK UNIVERSITY,

                    Defendant.

_____

# MEMORANDUM OF LAW

## IN SUPPORT OF THE PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

**E. STEWART JONES HACKER MURPHY LLP**
JULIE A. NOCIOLO, ESQ.
SDNY Bar Roll No. JN5887
*Attorney for Plaintiff Jane Doe*
28 Second Street
Troy, New York 12180
Tel. (518) 274-5820

**MUDRICK & ZUCKER, P.C.**
ADAM D. ZUCKER, ESQ.
Attorney ID. 53214
Pending Pro Hac Vice Admission
*Attorney for Plaintiff Jane Doe*
325 Sentry Parkway
Building 5 West. Suite 320
Blue Bell, PA 19422
Tel. (610) 832-0100

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT…………………………………………………………4

STATEMENT OF THE CASE………………………………………………………...4

FACTUAL BACKGROUND…………………………………………………………5

ARGUMENT………………………………………………………………………..12

      A.    LEGAL STANDARD……………………………………………………12

      B.    PLAINTIFF IS LEGALLY ENTITLED TO A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION ENJOINING NYU FROM UNLAWFULLY SUSPENDING HER FROM THE UNIVERSITY BECAUSE DEFENDANT BREACHED ITS CONTRACT WITH PLAINTIFF…………14

           1.    Plaintiff is Being Irreparably Harmed and will Continue to be Irreparably Harmed in the Absence of a Temporary Restraining Order and Preliminary Injunction……………………………………………………………14

           2.    Plaintiff has Demonstrated a Likelihood of Success on the Merits of her Claims against NYU……………………………………………………15

                 a.    <u>NYU unlawfully applied its student conduct policy to alleged extra jurisdictional conduct</u>……………………………………………16

                 b.    <u>NYU unlawfully applied its general student conduct policy to specific allegations of COVID-19 related violations</u>……………17

                 c.    <u>Even still, NYU failed to support its finding of violation with legally sufficient evidence</u>………………………………………17

           3.    The Balance of Equities Weighs in Plaintiff's Favor and Injunctive Relief is in the Public Interest…………………………………………………...19

CONCLUSION……………………………………………………………………19

## <u>TABLE OF AUTHORITIES</u>

*Benisek v. Lamone*, 138 S.Ct. 1942 (2018)…………………………………………………….13

*Citigroup Global Mkts, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30 (2d Cir. 2010)…………………………………………………………………………………………..13

*Diversified Mortg. Investors v. U.S. Life Ins. Co. of New York*, 544 F.2d 571 (2d Cir. 1976)…..13

*Eng v. Smith*, 849 F.2d 80 (2d Cir. 1988)……………………………………………………...…..13

*Lynch v. City of N.Y.*, 589 F.3d 94 (2d Cir. 2009)…………………………………………...…..13

*N. Am. Soccer League, LLC v. United States Soccer Federation, Inc.*, 883 F.3d 32 (2d Cir. 2018)……………………………………………………………………………………………..13

*Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105 (2d Cir. 2014)……………………………………………………………………………………………14, 20

*Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 93 (2d Cir. 2011)…….16-17

*Bhandari v. Trustees of Columbia Univ.*, 00-cv-1735, 2000 WL 310344 (S.D.N.Y. Mar. 27, 2000) ……………………………………………………………………………………………16

*Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 206 (S.D.N.Y. 1998)……………………………17

*Doe v. Rensselaer Polytechnic Institute*, 20-cv-1359 (BKS/CFH), 2020 WL 6544607 (N.D.N.Y. Nov. 6, 2020)………………………………………………………………………………………13

*Doe v. Rensselaer Polytechnic Institute*, 18-CV-1374 (FJS/CFH), 2019 WL 181280 (N.D.N.Y. Jan. 11, 2019)………………………………………………………………………………..14

*Doe v. Vassar Coll.*, 19-cv-9601 (NSR), 2019 WL 6222918 (S.D.N.Y. Nov. 21, 2019)………14

*Napierski v. Guilderland Democratic Cmte.*, 18-CV-846, 2018 WL 3546175 (N.D.N.Y. July 24, 2018)……………………………………………………………………………………………..13

*Carr v. St. John's Univ.*, 17 A.D.2d 632 (2d Dep't), *aff'd*, 12 N.Y.2d 802 (1962)……………..16

*Olsson v. Bd. of Higher Educ.*, 49 N.Y.2d 408 (1980)…………………………………………16

*Vought v. Teachers Coll., Columbia Univ.*, 127 A.D.2d 654 (2d Dep't 1987)…………………16

<u>Other Authority</u>

Fed. R. Civ. P. Rule 65………………………………………………………………………*passim*

## PRELIMINARY STATEMENT

The plaintiff JANE DOE,[1] by and through her attorneys E. Stewart Jones Hacker Murphy LLP and Mudrick & Zucker, P.C., submits this memorandum of law in support of plaintiff's motion for a preliminary injunction and temporary restraining order. For the reasons set forth below, the motion should be granted.

## STATEMENT OF THE CASE

Jane Doe is a student at New York University (hereinafter "NYU") and in her second semester of undergraduate study. Jane Doe has no disciplinary history with NYU. Doe lived in NYU's dormitory housing in Weinstein Hall. This semester, she has been taking all but one lab class online (from her dorm room) through the university's virtual portal. As part of Doe's enrollment at NYU, she has been tested for COVID-19 over twenty times all yielding negative results.

On the evening of Saturday January 30, 2021, Doe was invited to a dinner at a private off campus apartment about a mile from campus. Doe attended the dinner with six (6) other people; there was a total of seven (7) individuals, including Doe, in attendance. Before the dinner, Doe confirmed that everyone attending tested negative for COVID-19. Doe donned a mask from the time she left her room until she sat for dinner at the private, off campus apartment. Doe and others only removed their masks to eat dinner. As the diners finished their meal and were preparing to leave, one diner suggested they take a photo. Immediately after the photo was taken, Doe and others put on their masks and left the dinner. Doe returned to her dorm room alone via taxi.

On February 18, 2021, six (6) days after being notified by NYU of the alleged violations

---

[1] "Jane Doe" is a pseudonym. On the same date that we filed this motion for a temporary restraining order and preliminary injunction, we have filed a motion for leave to prosecute this case under an assumed name for the plaintiff.

of its Student Conduct Policy, Doe was found in violation and sanctioned to a one-semester suspension and disciplinary probation through December 31, 2021.  Doe's purported misconduct was that she was "at a gathering without the use of masks or physical distancing; a photo of this was posted online and shared with [NYU] through the University's anonymous reporting channels."  (*See* Compl. Ex. C).  Doe timely appealed, and on March 5, 2021, NYU upheld its determination.  Doe was required to move out of NYU housing; she has now returned to her home across the country in California.

Under New York law, universities and students enter into a contract upon a student's acceptance of a universities' offer of admission.  Both the university and the student must follow university policy, failure to do so is a breach of that contract.  NYU, here, breached its contract to Jane Doe in three ways.

First, NYU applied its policies extra jurisdictionally to regulate and sanction conduct at a non-university private apartment over one mile from campus.

Second, NYU improperly applied its own policies to sanction Doe's alleged conduct by applying a general provision when a specific one controlled.

Third, to the extent NYU has jurisdiction over Doe's conduct and can sanction Doe under a general policy provision, which plaintiff does not concede, NYU fails to support its finding by legally sufficient evidence.

These three errors by NYU are breaches of contract that cause Doe concrete and immediate irreparable harm that cannot be remedied by a later permanent injunction or monetary damages.

## FACTUAL BACKGROUND

A.      **Plaintiff Jane Doe.**

Plaintiff "Jane Doe" is a student at NYU. (*See* Doe Decl. ¶ 3). She has been studying there since the fall of 2020. (*Id.*). She is on a pre-med track pursuing a degree in sociology with the intent to complete a minor degree in chemistry. (*Id.* ¶¶ 5-6). To date she has earned a 3.66 grade point average. (*Id.* ¶ 6). Upon successful competition of the program, Doe will earn a Bachelor of Science in Sociology. (*Id.*). But for NYU's unlawful suspension, Doe's anticipated graduation date is May 2024. (*Id.*) Until the events described below, Doe has never been charged with any misconduct of any kind by NYU. (*Id.* ¶ 4). Doe's family has already paid NYU the scheduled payment of tuition for this semester. (*Id.* ¶¶ 10-11).

Doe's home is in California, but during the school year she lives on campus in NYU housing. (*Id.* ¶ 12). In response to COVID-19, NYU has allowed professors and students to complete class lectures remotely online. (*Id.* ¶ 14). Doe attends all of her courses remotely while in her dorm room with the exception of a lab course that she attends every other week in person. (*Id.* ¶¶ 15-16) but could attend remotely. As part of Doe's enrollment at NYU she has been tested over twenty times for COVID-19 both before and after the January 30, 2021 dinner, each time yielding negative results. (*Id.* ¶¶ 18-19).

Doe intended to work in an internship or work study program targeted toward her career path this summer, however, because she has been suspended (see below) she is no longer eligible. (*Id.* ¶¶ 8, 44).

**B.**    **NYU's University Policies**

Here, NYU has two operative policies that govern plaintiff's conduct.[2] The first, NEW YORK UNIVERSITY STUDENT CONDUCT POLICY (hereinafter "Student Conduct Policy"), is defendant's general policy that enumerates prohibited student conduct ranging from drug and

---

[2] NYU does have a third policy entitled "Student Conduct Procedures," which explains the student conduct process, but does not contain explicit provisions dictating student conduct. (*See* Compl. Ex. A).

alcohol possession and destruction of property to hazing and theft.  (*See generally* Compl. Ex. D).  The second, POLICY ON REQUIREMENTS RELATED TO ACCESS TO NYU BUILDINGS AND CAMPUS GROUNDS RESULTING FROM THE COVID-19 PANDEMIC (hereinafter "COVID-19 Policy"), is a policy tailored to NYU's response to the pandemic and became effective on August 5, 2020.  (*See generally* Compl. Ex. B).  This policy essentially operates as a rider to the Student Conduct Policy and is explicitly incorporated by reference in the general Student Conduct Policy. (*See* Compl. Ex. D at III.E.3).  To plaintiff's knowledge, NYU's COVID-19 Policy has not been amended since its effective date.

1.      NYU's Student Conduct Policy

NYU publishes a handbook to the entire student body called the NEW YORK UNIVERSITY STUDENT CONDUCT POLICY (the "Student Conduct Policy").  (*See* Compl. Ex. D.)

The document is conspicuous for its direct, code-like prescription of rules and standards applicable to both students *and the administration*.  That is, the handbook does not proffer mere guidance, nor does it frame its content as a menu of discretionary privileges extended by the school.  Rather, the document lays out both the *rights* and the responsibilities of students at NYU.  (*See id.*).  By its own terms, the Student Conduct Policy "has been developed to promote education and *procedural fairness* to students."  (*Id.* at VII [emphasis added]).  Among other things, the Student Conduct Policy guarantees students the right to "free association" explaining that "[f]ree inquiry, free expression, and free association enhances academic freedom and intellectual engagement. (*Id.* at II.)

As relevant to this litigation, the Student Conduct Policy explicitly addresses off campus conduct and states:

> The University shall not use its powers to interfere with the rights
> of a student beyond the University environment.  *Conduct that*

> *occurs off-campus*, online, over social media, or outside the
> context of a University program or activity, *should generally be
> subject only to the consequences of the applicable authority and/or
> public opinion.*  Notwithstanding, the University may take student
> disciplinary action for conduct occurring outside the University
> context which *substantially disrupts the regular operation of the
> University or threatens the health, safety, or security* of the
> University community.  When conduct constitutes violations of
> both University policy and public law, a student may be subject to
> both University student conduct as well as public sanctions.

(*Id.* at IV [emphasis added]).  The Student Conduct Policy incorporates by reference the COVID-19 Policy and functions as its enforcement mechanism.  Specifically, the provision of Prohibited Conduct: Disorderly Conduct lists "[f]ailure to abide by the [COVID-19 Policy], or any related governmental orders issued concerning public health" as a basis for the violation.  (*Id.* at III.E.3).

2.     NYU'S COVID-19 Policy

NYU's COVID-19 Policy's explicit purpose "is to reduce risks associated with the University's operations during the evolving COVID-19 pandemic."  (Compl. Ex. B at "Statement of Policy").  The focus of the policy is "on COVID-19 disease prevention, infection control, and mitigation in accordance with all applicable law and public health prevention, infection control, and mitigation in accordance with all applicable law and public health guidance and NYU's best judgment based on reasonable and appropriate public health measures."  (*Id.*).

The COVID-19 Policy explicitly applies to "all Members of the NYU Community who may be in NYU Buildings and on Campus Ground in New York."  (*Id.* at "To Whom Policy Applies").  The COVID-19 Policy, however, does not govern off campus conduct.  To be sure, there is a definition section in this policy in which the following material terms are defined:

> *Campus Grounds* means any space outside of NYU Buildings
> which is used by NYU, including but not limited to, plazas,
> walkways, and loading docks.

> *NYU Buildings* means any building, owned or leased by NYU, in which NYU conducts any of its operations, including but not limited to, for classes, activities, and administrative functions. Such NYU Buildings include, but are not limited to, classrooms, laboratories, residence halls, administrative offices, balconies, hallways, and vestibules.

(*Id.* at "Definitions").   The policies provisions regarding face coverings and social distancing applies "at all times *while in NYU buildings and on campus grounds*," "while *in NYU buildings*," or "when entering *NYU buildings* while transiting through them and in workspaces."   (*Id.* at "Policy and Procedures" A-B [emphasis added]).

### C.   NYU's Suspension of the Plaintiff

On the evening of Saturday January 30, 2021, Doe was invited to a dinner at a private off campus apartment about a mile from campus. (Compl. ¶ 61).  Doe attended the dinner with six (6) other people; there was a total of seven (7) individuals, including Doe, in attendance. (*Id.*).  Before the dinner, Doe confirmed that everyone attending tested negative for COVID-19. (*Id.* ¶ 63).  Doe donned a mask from the time she left her room until she sat for dinner at the private, off campus apartment. (*Id.* ¶ 65).  Doe and others only removed their masks to eat dinner. (*Id.* ¶ 66).  As the diners finished their meal and were preparing to leave, one diner suggested they take a photo. (*Id.*).  Immediately after the photo was taken, Doe and others put on their masks and left the dinner. (*Id.*).  Doe returned to her dorm room alone via taxi.  (*Id.*; Doe Decl. ¶ 31).

On Friday February 12, 2021, Jessica Spera, NYU's Assistant Director for Student Conduct and Community Standards transmitted an email to the plaintiff alleging that the plaintiff was at a gathering without the use of masks or physical distancing and her attendance at the dinner violated three provisions of NYU's Student Conduct Policy, specifically:

### B.    BULLYING,    THREATENING,    AND    ABUSIVE BEHAVIOR

1. Engaging in or threatening to engage in behavior that, by virtue of their intensity, repetitiveness, or otherwise endanger or compromise the health, safety or well-being of oneself, another person or the general University community.

### E. DISORDERLY CONDUCT

1.  Disorderly, disruptive, or antagonizing behavior that interferes with the safety, security, health or welfare of the community, and/or the regular operation of the University.

3. Failure to abide by the Policy on Requirements Related to Access to NYU Buildings and Campus Grounds Resulting from COVID-19 Pandemic, (COVID-19 Policy) or any related governmental orders issued concerning public health.

(Compl. ¶ 70; Compl. Ex. G).  Ms. Spera explained that Sanctions to be considered may include suspension and that Plaintiff's attendance is important.  (Compl. ¶ 71).  However, Ms. Spera also indicated that, "[t]his meeting will serve as an opportunity for you to share your perspective of the incident and for us to engage in a conversation about community living at New York University." (Compl. Ex. G).

Four days later, Doe met with Ms. Spera over Zoom video conference to "share her perspective and engage in the conversation about community living at NYU." (Compl. ¶ 74). The entire conversation between Plaintiff and Ms. Spera lasted no more than fifteen (15) minutes. (*Id.*).

 On February 18, 2021, six (6) days after being notified by NYU of the alleged violations of its Student Conduct Policy, NYU found the Doe in violation of two of the three charged provisions of the Student Conduct Policy:

### B.    BULLYING, THREATENING, AND ABUSIVE BEHAVIOR

1. Engaging in or threatening to engage in behavior(s) that, by

virtue of their intensity, repetitiveness, or otherwise, endanger or compromise the health, safety or well-being of oneself, another person, or the general University community, or that disrupt the effective continuation of the academic/educational process for individual students or for the general University community.

\*\*\*

**E. DISORDERLY CONDUCT**

\*\*\*

3. Failure to abide by the Policy on Requirements Related to Access to NYU Buildings and Campus Grounds Resulting from the COVID-19 Pandemic, or any related governmental orders issued concerning public health.

(Compl. Ex. D at III.B.1, E.3).  Doe was notified of NYU's finding through an email transmitted by Ms. Spera.  (Compl. Ex. C).  In support of NYU's determination, Ms. Spera wrote:

During our conversation, you stated that you went to a dinner gathering at an off-campus apartment.  We discussed the lack of consistent masks and physical distancing.   As well as the University's clear messaging on these types of gatherings. You acknowledged that there was a lapse in considering the University's strict rules regarding gatherings and this was an incident of poor judgment.

Considering the importance of creating a safe environment during a global pandemic, the University will not tolerate conduct which ***intentionally and recklessly disregards the rules and threatens the health and safety of others.***

(*Id.*).  Ms. Spera's email mentioned nothing of the safety precautions taken by plaintiff and failed to state how plaintiff disregarded the rules and was a threat to the health and safety of others. (*See* Compl. ¶ 76).  For this conduct, Doe was sanctioned to a suspension of the remainder of her Spring 2021 semester followed by a one semester disciplinary probation as well as the completion of a COVID Individual Learning Project to be completed by March 15, 2021.  (*See* Compl. Ex. C).  Ms. Spera also notified Doe that she had the right to appeal on certain limited grounds.  (*Id.*)

11

Doe timely appealed, and on March 5, 2021, NYU upheld its determination without explanation.  (*See* Compl. ¶¶ 81-91; Compl. Exs. H-J).  Doe was required to move out of NYU housing; she has now returned to her home across the country in California.  (*See* Compl. Ex. C at 2).

NYU's last day of online classes for the current semester is May 10, 2021. (Doe Decl. ¶ 41).  Excluding weekends (when classes are not held) as of the date of this filing there are only forty-one (41) class days remaining in the semester.  (*Id.*)  Every day that passes while the plaintiff is unlawfully suspended is the loss of an irreplaceable educational opportunity.  Doe had been scheduled to graduate from her undergraduate work effective May 2024. (Compl. ¶ 97.)  Her timely graduation is clearly jeopardized by the suspension, which grows longer by the day.

## ARGUMENT

### A.    THE LEGAL STANDARD FOR INJUNCTIVE RELIEF.

Rule 65 of the Federal Rules of Civil Procedure governs both temporary restraining orders and preliminary injunctions.  *See* Fed. R. Civ. P. Rule 65.  "In the Second Circuit, the standard for issuance of a temporary restraining order is the same standard as the standard for a preliminary injunction."  *Doe v. Rensselaer Polytechnic Institute*, 20-cv-1359 (BKS/CFH), 2020 WL 6544607 at *5 (N.D.N.Y. Nov. 6, 2020) (hereinafter "*RPI*").  "The purpose of a preliminary injunction is to maintain the status quo pending a final determination on the merits."  *Diversified Mortg. Investors v. U.S. Life Ins. Co. of New York*, 544 F.2d 571, 576 (2d Cir. 1976).

In proceedings challenging a university's determination in a student conduct matter, the injunctive relief requested is prohibitory in order to "'maintain the status quo pending resolution of the case.'"  *RPI*, 2020 WL 6544607 at *5 (quoting *N. Am. Soccer League, LLC v.*

12

*United States Soccer Federation, Inc.*, 883 F.3d 32, 36 [2d Cir. 2018]).  The movant's burden for a prohibitory injunction is to "show a greater than fifty percent probability of success." *Citigroup Global Mkts, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 34-35 (2d Cir. 2010).  Thus, relief may be warranted even though there remains "considerable room for doubt" about whether the plaintiff will ultimately prevail.  *Eng v. Smith*, 849 F.2d 80, 82 (2d Cir. 1988).   Courts have interpreted the status quo as "the last actual, peaceable uncontested status."  *Id.*  In university disciplinary cases, courts have routinely found that the status quo is "the moment before [a student] [p]laintiff's suspension was imposed."  *Doe v. Vassar Coll.*, No. 19-cv-9601 (NSR), 2019 WL 6222918, at *4 (S.D.N.Y. Nov. 21, 2019).

"A party seeking a preliminary injunction must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that the preliminary injunction is in the public interest." *N. Am. Soccer League, LLC*, 883 F.3d at 37; *see also Benisek v. Lamone*, 138 S.Ct. 1942, 1944 (2018).

"Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision in the merits can be rendered." *Doe v. Rensselaer Polytechnic Institute*, No. 1:18-CV- 1374 (FJS/CFH), 2019 WL 181280, at *2 (N.D.N.Y. Jan. 11, 2019) (internal quotations and citations omitted). The Second Circuit has held that preliminary relief should be granted "where a plaintiff demonstrates 'irreparable harm' and meets one of two related standards: 'either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.'" *Otoe-Missouria Tribe of Indians v.*

*New York State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) (quoting *Lynch v. City of N.Y.*, 589 F.3d 94, 98 (2d Cir. 2009) (internal quotation marks omitted)). "A balance of equities tipping in favor of the party requesting [injunctive relief] means a balance of the hardships against the benefits." *Napierski v. Guilderland Democratic Cmte.*, No. 18-CV-846, 2018 WL 3546175, at *2 (N.D.N.Y. July 24, 2018).

**B.     PLAINTIFF IS LEGALLY ENTITLED TO A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION ENJOINING NYU FROM UNLAWFULLY SUSPENDING HER FROM THE UNIVERSITY BECAUSE NYU BREACHED ITS CONTRACT WITH PLAINTIFF.**

**1.     Plaintiff is Being Irreparably Harmed and will Continue to be Irreparably Harmed in the Absence of a Temporary Restraining Order and Preliminary Injunction.**

There can be little doubt that Doe's suspension midway through her second semester at NYU is irreparable harm.

The plaintiff has invested hard work and tuition dollars in obtaining a degree from NYU—an institution that induced her to study there (instead of at other colleges) with the promise of a top tier education and prestigious credentials upon graduation.  The direct instruction from the plaintiff's professors—which she is denied during this suspension—is invaluable and irreplaceable.  Indeed, that is precisely what NYU sells.  Anyone can read books about sociology, biology, and the other subjects of the plaintiff's study.  But the benefit of an *NYU education* is instruction from *NYU faculty*.  Every day lost of NYU faculty interaction is a day she will never get back.  This is a unique benefit for which money damages are a poor and clumsy substitute.

Moreover, the interruption of Doe's coursework jeopardizes her scheduled completion of her undergraduate degree.  But for NYU's suspension of Doe's Spring 2021 semester, she was on track to graduate in May 2024.  (*See* Doe Decl. ¶ 6).

14

Furthermore, plaintiff will seek summer employment through pipeline internships that will likely result in post-collegial permanent employment. (*See* Doe Decl. ¶¶ 8, 44).  Without preliminary relief from this Court, she will be required to explain her unlawful suspension to potential employers likely disqualifying her from consideration.   Defendant's discipline requires Doe to forfeit the benefit of the work she already performed this semester and interrupts Doe's journey on her professional career path.  *See Bhandari v. Trustees of Columbia Univ.*, 00-cv-1735, 2000 WL 310344, at *5 (S.D.N.Y. Mar. 27, 2000) (finding irreparable harm where the plaintiff was suspended midway through the semester and would lose "the benefit of the work he has already performed this semester"); *see also RPI*, 2020 WL 6544607 (same).  Doe's sacrifice of both time and opportunity cannot be returned to her through money damages or a permanent injunction following a decision on the merits.  The harm she faces is concrete and immediate.

### 2.     Plaintiff has Demonstrated a Likelihood of Success on the Merits of her Claims against NYU.

Under New York law, "an implied contract is formed when a university accepts a student for enrollment: if the student complies with the terms prescribed by the university and completes the required courses, the university must award him a degree." *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 93 (2d Cir. 2011) (citing *Carr v. St. John's Univ.*, 17 A.D.2d 632, 633 [2d Dep't], *aff'd*, 12 N.Y.2d 802 [1962]).  The terms of the implied contract are "contained in the university's bulletins, circulars and regulations made available to the student." *Id.* (quoting *Vought v. Teachers Coll., Columbia Univ.*, 127 A.D.2d 654, 654 [2d Dep't 1987]). "Implicit in the contract is the requirement that the institution 'act in good faith in its dealing with its students.'" *Papelino*, 633 F.3d at 93 (quoting *Olsson v. Bd. of Higher Educ.*, 49 N.Y.2d 408, 413–14 [1980]).  At the same time, "the student must fulfill

[his] end of the bargain by satisfying the university's academic requirements and complying with its procedures." *Id.* (quoting *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 206 [S.D.N.Y. 1998]).   If the terms of the implied contract are "contained in the university's bulletins, circulars and regulations made available to the student" (*Papelino*, 633 F.3d at 93).

In this case we find those terms and conditions in NYU's Student Conduct Policy, which it publishes to the entire student body. (Compl. Ex. D.)  That document prescribes a code-like set of terms binding on the administration.  Simply put, NYU must follow its own rules, and its failure to do so is a breach of contract.  NYU failed to do that in this case in three different ways.

     a.   <u>NYU unlawfully applied its Student Conduct Policy to alleged extra jurisdictional conduct.</u>

<u>First</u>, NYU purports to exercise jurisdiction wrongfully over a private matter that occurred entirely off-campus.  NYU policies make clear that "[t]he University shall not use its powers to interfere with the rights of a student beyond the University environment."  (*See* Compl. Ex. D at IV.)  NYU explicitly recognizes the right of its students to freely associate. (*See* Compl. Ex. D at II ["(F)ree association enhances academic freedom and intellectual engagement."].)  NYU also explicitly recognizes that its COVID-19 policy requiring masks and social distancing applies only to NYU buildings and campus grounds.  (*See* Compl. Ex. B at "Statement of Policy" [stating "this Policy sets forth requirements for Members of the NYU Community . . . **<u>entering NYU Buildings and while on Campus Grounds during the COVID-19 pandemic</u>**"] [emphasis added]).  Nevertheless, NYU decided to regulate and sanction Doe's off campus conduct at a non-university, private apartment.  Therefore, NYU's conduct proceeding is extra-jurisdictional, and breaches the contract for that separate and distinct reason.

b.    NYU unlawfully applied its general student conduct policy to specific allegations of COVID-19 related violations

NYU improperly applied its own policies to sanction Doe's alleged conduct.  NYU has a general student conduct policy and a specific COVID-19 policy, which essentially functions as a rider to the general policy and is explicitly incorporated by reference to the Student Conduct Policy.  (*See* Compl. Ex. D at III.E.3).  The allegations against Doe (failure to wear a mask and social distance) are explicitly delineated in NYU's COVID-19 Policy.  Black letter contract law dictates that specific policies and provisions control over general ones.  Here, NYU elected to sanction Doe for conduct that fell under a general policy provision prohibiting "Bullying, Threatening, and Abusive Behavior," (*see* Compl. Ex. D at III.B), when it is clear that the specific allegation of failing to don a mask and social distance is explicitly referenced in NYU's COVID-19 Policy, (*see* Compl. Ex. B at "Policy and Procedures" A-B), and regulated by incorporation under "Disorderly Conduct," (*see* Compl. Ex. D at III.E.3 [stating that commits disorderly conduct by "fail[ing] to abide by the [COVID-19 Policy], or any related governmental orders issued concerning public health"]).  Setting aside the facts underlying the alleged violation, NYU erred at the outset by charging and violating Doe under a general policy provision when a specific one controlled.

c.    Even still, NYU failed to support its finding of violation with legally sufficient evidence.

 Third, to the extent NYU has jurisdiction over Doe's conduct and can sanction Doe under a general policy provision, which plaintiff does not concede, NYU fails to support its finding by legally sufficient evidence.  NYU charged Doe with the prohibited conduct of "Bullying, Threatening, and Abusive Behavior."  (*See* Compl. Ex. D at III.B).  Specifically, NYU charged Doe with:

17

> Engaging in or threatening to engage in behavior(s) that, by virtue of their intensity, repetitiveness, or otherwise, endanger or compromise the health, safety or well-being of oneself, another person, or the general University community, or that disrupt the effective continuation of the academic/educational process for individual students or for the general University community.

(*See* Compl. Ex. D at III.B.1).  The only proof against Doe was a photo of her posted on social media with three other diners without masks taken while they were eating dinner; this photo was submitted to NYU through its anonymous reporting channels.  Doe never denied that she attended the private, off campus dinner, however, vehemently disputes NYU's conclusions that her failure to wear a mask during the dinner violated the university's policies.  In fact, the January 30, 2021 dinner was in full compliance with New York State guidance.[3]  NYU concluded without any rationale or basis that Doe's conduct (posing for a maskless photo during an off campus, private dinner while complying with all other federal and state regulations and protocols) violated its policy and required a sanction of suspension followed by disciplinary probation.  If the above mentioned conduct sufficiently meets the legal standard for NYU's prohibited conduct of "Disorderly Conduct," it is difficult to imagine what conduct would not subject an NYU student to sanctions.

Moreover, Doe's conduct can hardly be defined as "intens[e]" or "repetitive[]."  While this list is non-exhaustive, the principle of ejusdem generis demands that a general word following a list of specifics the general word will be interpreted to include only items of the same type as lost specifically enumerated.  *See Camperlino v. Bargabos*, 96 A.D.3d 1582, 1584 (4th Dep't 2012).  Nothing in Doe's one-time conduct demonstrates that the short duration in which she was maskless to take a photo at an off campus, private dinner with only seven (7) individuals

---

[3] Effective November 13, 2020, New York State Department of Health guidelines restricted indoor and outdoor gatherings statewide at private residences to no more than 10 people.  (*See* Compl. Ex. F; *See also* "What You Need to Know," New York Forward, *available at* https://forward.ny.gov/reopening-what-you-need-know (last visited March 12, 2021).

who tested negative for COVID-19 is either "intens[e]" or "repetitive[]."  (Compl. Ex. D at
III.B.1).

Based on these three separate and distinct breaches of the contract, the plaintiff has
demonstrated a likelihood of success on the merits or, at the very least, there are "sufficiently
serious questions going to the merits of its claims to make them fair ground for litigation."
*Otoe-Missouria Tribe of Indians*, 769 F.3d at 110.

### 3. The Balance of Equities Weighs in Plaintiff's Favor and Injunctive Relief is in the Public Interest.

The harm to Jane Doe in the absence of a temporary restraining order and injunction is
plain (as descried above).

Equally plain is that NYU stands to suffer no harm—none—if the injunction and TRO
is granted.  NYU will be made simply to allow its student to resume online learning, as she
was doing all semester prior to these events, and for which she has already paid the tuition.  In
other words, NYU will be made to do what it is supposed to be doing already: educate its
student.  Allowing Doe to resume the online learning from her house in California poses *zero*
risk of harm to NYU, its students or its staff.  There is no credible argument to the contrary.
The balance of equities tilts dramatically away from NYU to the plaintiff.  Moreover, the
injunction is in the public interest.  The conferral of a college education upon a student who
has earned it or is in the process of earning it is beneficial enterprise. In contrast, there is no
public benefit to excluding a student from online education from her own home (from which
she poses no health risk to anyone on campus) in derogation of the school's own Student
Conduct Policy.

## CONCLUSION

For the foregoing reasons, the plaintiff's emergency motion for a temporary restraining

order and preliminary injunction should be granted.

Dated:  March 12, 2021     Respectfully submitted,

**E. STEWART JONES HACKER MURPHY LLP**

*Julie Nociolo*

By: Julie A. Nociolo
SDNY Bar Roll No. JN5887
*Attorney for the Plantiff Jane Doe*
28 Second Street
Troy, N.Y.  12180
(518) 274-5820
Email: jnociolo@joneshacker.com

**MUDRICK & ZUCKER, P.C.**
ADAM D. ZUCKER, ESQ.
Attorney ID. 53214
Pending Pro Hac Vice Admission
*Attorney for Plaintiff Jane Doe*
325 Sentry Parkway
Building 5 West. Suite 320
Blue Bell, PA 19422
Tel. (610) 832-0100
Email: adam@mudrickzucker.com