UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JANE DOE,

               Plaintiff,

    -against-

                                        Civil Action No.:

NEW YORK UNIVERSITY,

               Defendant.

---

# **COMPLAINT**

**MUDRICK & ZUCKER, P.C.**
ADAM D. ZUCKER, ESQ.
Attorney ID. 53214
Pending Pro Hac Vice Admission
*Attorneys for Plaintiff Jane Doe*
325 Sentry Parkway
Building 5 West. Suite 320
Blue Bell, PA, 19422
Tel. (610) 832-0100


**E. STEWART JONES HACKER MURPHY LLP**
JULIE A. NOCIOLO, ESQ.
Bar Roll No. JN5887
*Attorneys for Plaintiff Jane Doe*
28 Second Street
Troy, New York 12180
Tel. (518) 274-5820

Plaintiff JANE DOE, by and through her attorneys, E. STEWART JONES HACKER MURPHY LLP, and MUDRICK & ZUCKER, P.C. complaining of defendant, NEW YORK UNIVERSITY, alleges as follows:

### THE NATURE OF THIS ACTION AND FACTS OF THE CASE

1.       This is a breach of contract case.  The plaintiff, suing pseudonymously as "Jane Doe," is a student enrolled at defendant New York University("NYU").  Doe is currently in her second semester of undergraduate study.

2.       Approximately Three weeks ago, on Thursday, February 18, 2021, NYU summarily suspended Doe for the Spring Semester of 2021 from participating in her classes (which she had been attending "virtually," meaning, online and not in the classrooms with the exception of one chemistry lab every other week which Plaintiff is able to participate in remotely) by invoking its power to impose an suspension.  To be sure, NYU has the power to impose such discipline for a violation of its disciplinary policy."  *See* NEW YORK UNIVERSITY -UNIVERSITY PROCEDURES: STUDENT CONDUCT PROCEDURES  B: CONDUCT CONFERENCE, a true and accurate copy of which is annexed hereto as **Exhibit "A"** (the "Student Conduct Procedures").

3.       The purported reason for the suspension was that the plaintiff attended an off-campus meal three weeks earlier at a private, off-campus apartment on Saturday, January 30, 2021 that allegedly did not comply with NYU's "Policy on Requirements Related to Access to NYU Buildings and Campus Grounds Resulting from the COVID-19 Pandemic."  A true and correct copy of said policy is attached hereto and made a part hereof as **Exhibit "B"**

Although there is no contention that anyone at the gathering had or transmitted COVID-19, and the plaintiff and each of the attendees had tested negative for the disease numerous times before and after the gathering, the university refuses to allow her to attend her classes (*even*

*virtually*) on the specious theory that the "University will not tolerate conduct which intentionally and recklessly disregards the rules and threatens the health and safety of others" (*See* Resolution of Student Conduct Matter email dated February 18, 2021" a true and correct copy is attached hereto **as Exhibit "C"**). (except that the plaintiff's identifying information has been redacted).

4.      The suspension is for the entirety of the spring 2021 semester, In the meantime, as day after day passes with the plaintiff excluded from the virtual classroom virtual labs and every other week lab which she can also take remotely, she is losing the benefit of the education for which she bargained (and for which her family has already paid significant tuition). The plaintiff's timely graduation from the undergraduate program is in jeopardy as is Plaintiff's participation in the NYU Presidential Honors program for which she was recommended by one of her professors.

5.      In addition to the sanction of suspension the Plaintiff has been placed on Disciplinary Probation Until December 31, 2021. "Disciplinary Probation may restrict the Plaintiff from participation in specified extracurricular University activities and the University Study Away program" See Exhibit "A" IV SANCTIONS 15th bullet point.

6.      In addition to the aforementioned sanctions Plaintiff has been ordered to complete a COVID learning project requiring extensive research and writing.

7.      NYU found that its regular polices were insufficient to cover issues related the COVID-19 Pandemic and on August 12, 2021 created and implemented a policy that applies specifically to COVID-19 issues and behavior. (See Exhibit "B")

8.      The COVID-19 Policy is the exclusive Policy at NYU that addresses student behavior and actions in the context of the COVID-19 Pandemic.

9.      The COVID-19 Policy Specifically defines and limits the individuals and locations to which it applies.

10.     NYU's COVID-19 Policy all other NYU policies with regard to regulating student actions and behaviors within the context of the COVID-19 Pandemic.

11.     NYU failed to follow the language and limitations in its own policies including to whom and where said polices apply in its review and decision of Plaintiff's Conduct Case.

12.     NYU specifically breached its contract with Plaintiff in four ways:

- First, NYU incorrectly applied its policies to locations and activities which by its own definition are excluded from the Policies.

- Second, NYU incorrectly applied suggestive provisions of it polices as though they were mandatory.

- Third, NYU applied general provisions over specific and detailed provisions that followed in the same polices and in the same enumerated clause of said policies.

- Fourth, NYU failed to support its finding of a violation by legally sufficient evidence.

13.     The foregoing amounts to a breach of contract by the defendant, which inflicts an irreparable harm that is exacerbated by the day.

## THE PARTIES

14.     Plaintiff Jane Doe is a natural person with a principal residence in the State of California.  She is enrolled as a student with defendant NYU.  She is over 18 years old.

15.     The plaintiff was accepted to a number of universities across the country, including defendant NYU.

16.     The plaintiff ultimately chose to attend NYU and began there in the fall semester of 2020.

17.     Doe is pursuing a degree in NYU's Pre-Med path with a major in sociology and intended minor in chemistry in which she will earn a Bachelor of Science Degree in Sociology. She is scheduled to complete her undergraduate course work at the end of spring semester 2024. She currently earned a cumulative grade point average of 3.66 and has never been the subject of any disciplinary sanction at the university before this charge.

18.     The courses the plaintiff is taking in her program are so specialized that plaintiff's coursework cannot be made up in summer sessions, making it nearly impossible for her, at this point in her undergraduate career, to complete her education in four (4) years.

19.     Defendant New York University (previously defined herein as "NYU") is a private university located in New York, New York.

20.     NYU advertises itself as the oldest and first technological research university in the United States.

21.     NYU emphasizes its engineering, science, and technology programs.

22.     It is ranked sixth in top United States engineering universities by *USA Today*.

23.     It has received recognition as the home to one of the most powerful university-based supercomputers in the world.

24.     It also ranks in the top thirty on a U.S. News Best Colleges list of United States universities.

25.     The NYU Medical School which Plaintiff is working toward attending has an acceptance rate of only 2.45% making it one of the most competitive schools in the country according to the Mededits website dedicated to Medical School Admissions. It is also in the top ten (10) Medical schools by MCAT and GPA according to the Website "Lovetoknow"

## JURISDICTION AND VENUE

26.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1332 because it arises between citizens of different states and the amount in controversy exceeds $75,000.  The plaintiff is a citizen of and resides principally in the State of California.  The defendant, as an institution, is located in and is a subject of New York State.

27.     This Court has personal jurisdiction over defendant NYU because NYU conducts business within the State of New York.

28.     Venue for this action properly lies in this district pursuant to 28 U.S.C. § 1931 because a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of New York.

## JURY DEMAND

29.     The plaintiff hereby demands a trial by jury of all triable issues in this matter.

## FACTUAL ALLEGATIONS

**A.**     <u>New York University-University Policies-University Student Conduct Policy.</u>

30.     At all times mentioned herein, the plaintiff's relationship with NYU has been governed substantially by a certain document published by NYU to the entire student body including that entitled, New York University -University Policies- University Student Conduct Policy, a true and correct copy of which is attached here to as **Exhibit "D"**. Herein after "Student Conduct Policy."

31.     The Student Conduct Policy establishes a binding compact between NYU and its students.  By its own terms, it "lays out both the rights and the responsibilities of students at [NYU]." (*Id.*)  It includes a statement on "Academic Freedom, Demonstration and Protest" (*Id.* at II.) and "Conduct outside the University Context" (*Id. at IV.*)

32.     Among the rights conferred by the Student Conduct Policy is a right to "free association." (*Id.* at II.) "Free inquiry, free expression and free association enhances academic freedom and intellectual engagement." (*Id.* at II.)

33.     Also, among the rights conferred by the Student Conduct Policy is the right to be free from the Universities use of powers to interfere with the rights of a student beyond the University environment. (*Id. at IV.*)

34.     The Student Conduct Policy states that "Conduct that occurs off-campus, online, over social media, or outside the contest of a University program or activity, should generally be subject only to the consequences of the applicable authority and/or public opinion." (*Id. at IV*).

35.     At all times mentioned herein, the plaintiff's relationship with NYU has been governed substantially by a certain document published by NYU to the entire student body including that entitled, "Policy on Requirements Related to access to NYU Buildings and Campus Grounds Resulting from the COVID-19 Pandemic." (See Exhibit "B") Hereinafter "COVID-19 Policy."

36.     The COVID-19 Policy is significantly more detailed and specific with regard to governing the conduct of Students, Staff, Visitors and Vendors at NYU and the Jurisdiction of NYU than the Student Conduct Policy.

37.     The COVID-19 Policy limits requirements and location of its applicability to NYU property. "This policy sets forth requirements for members of the NYU community, which for purposes of this policy, includes, faculty, staff students, vendors and visitors entering NYU buildings and while on campus grounds during the COVID-19 pandemic." (Id. Statement of Policy).

38.     The COVID-19 policy further limits and qualifies to whom the policy applies. "this policy applies to all members of the NYU community who may be in NYU buildings and on campus grounds in New York." (Id. at To Whom the Policy Applies)

39.     The COVID-19 policy further limits the location where members of the NYU community are required to wear face masks "all members of the NYU community are required to wear face coverings at all times while in NYU buildings and on campus grounds." (Id. at Policy and Procedures. A. Face Coverings).

40.     A COVID-19 policy also limits the restrictions of "Social Distancing" "while in NYU buildings, all members of the NYU community are expected to maintain a distance of at least 6 feet from others …including when entering NYU buildings while transiting through them and in workspaces. (Id. at B. Physical Distancing)

41.     The COVID-19 policy goes to great lengths to be specific including definitions to be applied to the policy.

42.     The COVID-19 policy defines campus grounds as meaning "any space outside of NYU buildings which is used by NYU, including but not limited to, clauses, walkways, and loading docks." ( Id. at Definitions).

43.     The COVID-19 policy defines members of the NYU Community as "any person who is in an NYU building (sic) or campus grounds, including faculty, staff, administrators, students, interns, volunteers, vendors, and visitors." (Id. at Definitions)

44.     The COVID-19 policy goes so far as to define NYU buildings as meaning "any building, owned or leased by NYU, in which NYU conducts any of its operations, including but not limited to, for classes, activities, and administrative functions. Such NYU buildings include,

but are not limited to, classrooms, laboratories, residence halls, administrative offices, balconies, hallways and vestibules." ( Id. at Definitions).

45.     The COVID-19 policy directs that enforcement for non-compliance by students "will be addressed by the Office of Student Conduct and Community Standards, in accordance with the University Student Conduct Procedures." (Id. at E. Enforcement).

46.     At all times mentioned herein, the plaintiff's relationship with NYU has been governed substantially by a certain document published by NYU to the entire student body including that entitled, "New York University-University Procedures-Student Conduct Procedures. A true and correct copy of which is attached here to as Exhibit "E". Hereinafter "Student Conduct Procedures."

47.     The Student Conduct Procedures guarantees that an accused student (Respondent) "is afforded a fair and impartial process." (Id. at III)

48.     The protections of the Student Conduct Procedures, Student Conduct Policy and COVID-19 Policy are binding contractual rights benefitting NYU students, made in consideration of the students' attendance at NYU and payment of tuition.

49.     Subsequent to January 30, 2021 NYU sent SMS (Text) messages to students regarding covid testing and the use of Personal Protective Equipment (PPE). A true and correct copy of said Text is attached as **Exhibit "E".**

50.     The aforementioned Text stated "all NYUers must wear face coverings when on NYU property or in NYU facilities, and are *encouraged* to wear them at all times when outside the home .... "

**B.     NYU's Suspension of the Plaintiff**

51.     The current semester of academic study at NYU began on January 28, 2021.

52.     The plaintiff's family has paid NYU a significant portion of the tuition for this semester, with the balance due in the beginning of April.

53.     During this semester, the plaintiff has at all times resided in the NYU Weinstein Dormitory in New York City.

54.     The plaintiff has a single with no roommates who resides there with her.

55.     In response to the COVID-19 pandemic, during this semester NYU has given students and professors the option to attend or teach classes in person (in the classroom), or remotely through an online portal in which students can watch lectures and interact with professors via computer from their residences.

56.     During this semester, the plaintiff has been participating in her classes through the online portal with the exception of one in person lab every other week which she can take remotely online.

57.     Plaintiff has been tested for COVID-19 virtually every week of the spring and previous fall semester All of her test results were negative (*i.e.*, detected no presence of COVID). To date, Doe has been tested by NYU for COVID-19 twenty-three (23) times since the beginning of the school year; all of her test yielded negative results.

58.     Prior to arriving back at NYU from winter break, Plaintiff quarantined at home for a week and a half and then in a private apartment in New York City before moving into her dorm room on January 24, 2021.

59.     Upon moving into her dorm room Plaintiff was tested for COVID-19 by NYU and remained quarantined until she received a negative test result (meaning she tested negative for COVID-19) on January 28, 2021.

60.     Even after she received her negative COVID-19 test on January 28, 2021, Plaintiff remained in her room and did not socialize with other students until the night of the dinner on January 30, 2021.

**C.     January 30, 2021 Dinner**

61.     On the evening of Saturday, January 30, 2021 the plaintiff was invited to have dinner in a private off campus apartment in New York City, which is unaffiliated with NYU.  In fact, the apartment is approximately a mile away from campus.   This was to be a private dinner among the plaintiff and her fellow students and was not an NYU-sponsored event.  There were only seven (7) People in attendance at the meal including Plaintiff, an amount under the New York Department of Health Guidelines. A copy of said guidelines are attached hereto as **Exhibit "F"**, (hereinafter "State Guidelines").

62.     Just two days prior to attending the dinner, Plaintiff had tested negative for COVID-19 and remained alone until going to the dinner.

63.     Just Prior to attending the dinner Plaintiff confirmed that all other attendees had tested negative for COVID-19.

64.     Plaintiff traveled to the private apartment where the dinner was being held, approximately a mile away from her dorm, via Taxi.

65.     Plaintiff wore a face mask at all times from the time she exited her dorm room until she sat down to eat at the dinner, including but not limited to while in the dormitory, halls and lobby, on the sidewalk, in, the taxi and in the private apartment.

66.     With the exception a few seconds after she finished eating when she took an impromptu photograph Plaintiff wore a face mask until the time she arrived back on NYU's campus and entered her dorm room.

67.     One of the individuals in the photograph posted the same on a social media platform.

68.     NYU has set up a system to anonymously report violations of its COVID policy and encourages students and staff to report their fellow student and colleagues for disciplinary action.

69.     On January 31, 2021, an individual which NYU has not named purportedly turned in Plaintiff and others for violations of the NYU COVID-19 Policy as a result of the photograph, taken at the off-campus dinner.

**D.     Plaintiff's Conduct Inquiry Process by NYU**

70.     On Friday February 12, 2021, Jessica Spera, NYU's Assistant Director for Student Conduct and Community Standards transmitted an email to the plaintiff alleging that the plaintiff was at a gathering without the use of masks or physical distancing and       her attendance at the dinner violated NYU's Student Conduct Policy, specifically:

- Section B1. Engaging in or threatening to engage in behavior that, by virtue of their intensity, repetitiveness, or otherwise endanger or compromise the health, safety or well-being of oneself, another person or the general University community.

- Section E1.  Disorderly, disruptive, or antagonizing behavior that interferes with the safety, security, health or welfare of the community, and/or the regular operation of the University.

- Section E3. Failure to abide by the Policy on Requirements Related to Access to NYU Buildings and Campus Grounds Resulting from COVID-

19 Pandemic, (COVID-19 Policy) or any related governmental orders
issued concerning public health.

A true and accurate copy of that email is attached hereto as **Exhibit "G"** (except that the
plaintiff's identifying information has been redacted).

71.     In her email, Ms. Spera explained that Sanctions to be considered may include
suspension and that Plaintiff's attendance is important. *See id.*

72.     Despite the comment that suspension was a potential sanction Ms. Spera's email
suggested that there meeting was more of an informal conversation. She stated, "This meeting will
serve as an opportunity for you to share your perspective of the incident and for us to engage in a
conversation about community living at New York University." Id.

73.     As most relevant here, NYU's jurisdiction over conduct which occurs off-campus
or outside the context of a University program or activity is extremely limited. "Notwithstanding,
The University may take student disciplinary action for conduct occurring outside the University
context which *substantially disrupts the regular operation of the University* or threatens the health,
safety, or security of the University Community." *(See Student Conduct policy at IV).* [emphasis
added]

74.     Plaintiff met with Ms. Spera via zoom video conference on February 16, 2021 to
"share her perspective and engage in the conversation about community living at NYU" The entire
conversation between Plaintiff and Ms. Spera lasted no more than fifteen (15) minutes.

On February 18, 2021 Plaintiff received an email from Ms. Spera notifying that Ms. Spera
had found her in violation of the Student Conduct Policy specifically sections B1. Engaging
in or threatening to engage in behaviors that, by virtue of their intensity, repetitiveness, or
otherwise, in danger or compromise the health, safety or well-being of oneself, another

person, or the general University community, and Section E3. Failure to abide by the policy on requirements related to access to NYU buildings on campus grounds resulting from the COVID-19 pandemic, or any related governmental orders issued concerning public health. (COVID-19 Policy)

75.     Ms. Spera's email stated that "considering the importance of creating a safe environment during the global pandemic, the University will not tolerate conduct which intentionally and recklessly disregards the rules and threatens the health and safety of others" (see exhibit "C")

76.     Ms. Spera's email mentioned nothing of the safety precautions taken by plaintiff and failed to state how plaintiff disregarded the rules and was a threat to the health and safety of others.

77.     Ms. Spera's also references "the serious nature of this conduct and the disruption it has caused, and in consideration of your prior conduct history, if applicable, the following sanctions shall be imposed:" and then went on to list the sanctions including suspension. Id.

78.     In her email Ms. Spera does not state how Plaintiff's conduct has caused disruption at the University nor did she give any examples.

79.     In her email Ms. Spera referenced plaintiff's prior conduct history but did not state what that conduct history was and could not since plaintiff did not have a prior conduct history.

80.     Ms. Spera references, in her email, Plaintiff's alleged acknowledgment of a lapse in considering the University's *strict rules* regarding gatherings. Id. [emphasis added] yet only referenced policies and communications that were suggestive in nature and neither strict nor mandatory.

81.      On February 25, 2021 Plaintiff submitted a timely appeal of Ms. Spera's decision a true and correct copy of which is attached hereto as **Exhibit "H"** (except that the plaintiff's identifying information has been redacted).

82.      On March 4 and 5, 2021 Plaintiff submitted supplemental materials, regarding her academic achievements, for the appeal which were accepted by NYU. True and Correct copies of said supplementary materials are attached here to collectively as **Exhibit "I"**

83.      On Friday, March 5, 2021 plaintiff received an email denying her appeal from Marc Wais NYU's Senior Vice President for Student Affairs. A true and correct copy of said email is attached here to as **Exhibit "J"** (except that Plaintiff's identifying information has been redacted.)

84.      Vice President Wais' email states that the suspension was as a result of an off campus gathering on January 31, 2021 however, Plaintiff was not at any gathering on January 31, 2021. The Dinner attended was on January 30, 2021. Id.

85.      Vice President Wais' email "states that he reviewed the incident of January 31, 2021 and the material submitted relating to your attendance at a gathering without a face covering and social distancing in violation of public health directives by the University." Id.

86.      Vice President Wais' email states an incorrect date. Plaintiff was not at any gathering on January 31, 2021.

87.      Vice President Wais's email does not address the information provided to NYU that Plaintiff was wearing a face covering and social distanced for all but the short time she was eating and for the few seconds it took to take the photo. Id.

88.      Vice President Wais's email does not address Plaintiff's grounds for appeal based on an unduly harsh sanction.

89.     Vice President Wais references "public health directives by the University" but did not cite any directives and mischaracterizes suggestive practices as stated in the COVID-19 Policy, Student Conduct Policy and University Text messages regarding COVID policy as directives.

90.     Vice President Wais states in his email he consulted with Dr. Richard Kalb, Associate Dean of the College of Arts and Sciences.

91.     Vice President Wais summarily found that "the decision made was fair and followed protocol" Id. But he never stated the basis of his decision that it was fair and how it followed protocol, nor did he ever address the jurisdictional issues raised by Plaintiff in her appeal.

92.     There is no conceivable way that allowing the plaintiff to continue her *online classes* (from her dorm or house) could constitute a danger to the safety or health of persons or property on NYU's premises.

93.     Moreover, neither Ms. Spera's nor Vice President Wais' explained how allowing the plaintiff to participate in her online classes could possibly pose a danger to the safety of any person or property on NYU's premises.

94.     Plaintiff has already been participating in her all of her virtual classes from her single dorm room and with the exception of one lab every other week, which she can take remotely online.

95.     NYU's suspension of the plaintiff from the University was, and is, a violation of the terms of the Student Conduct Policy, Student Conduct Procedures and COVID-19 Policy.

96.     Plaintiff's mother is a Doctor and Infections Disease Physician working on the front lines of COVID-19 care in a hospital setting.

97.     On February 18, 2021 Plaintiff's mother contacted Ms. Spera to discuss the issue and advised Ms. Spera as to her profession.

98.   Ms. Spera suggested a time to talk, and she and Plaintiff's mother had a conversation regarding Plaintiff's disciplinary action during which Plaintiff's mother advised Ms. Spera that Plaintiff's activities were very low risk and further that she was very concerned about plaintiff as Plaintiff had mental health issues including anxiety and was worried how the charges and sanctions would affect her. Ms. Spera indicated she understood but said in response to the professional opinion rendered by Plaintiff's mother "well we have our polices" Regarding Plaintiff's mother's concern regarding Plaintiff's mental health, Ms. Spera said that she would have someone from their counseling department reach out to Plaintiff, but no one ever did.

99.   Plaintiff has had at least five (5) COVID tests since the January 30th dinner.

100.   Due to the precautions taken by Plaintiff at all times since She started school in August of 2020 Each of Plaintiff's weekly COVID tests including those since the January 30th dinner have been negative.

101.   To date, no positive COVID-19 cases have been linked to the January 30th dinner.

### AS AND FOR A FIRST CAUSE OF ACTION
#### (Breach of Contract – Specific Performance)

102.   The plaintiff restates, realleges and incorporates by reference all of the preceding allegations of this Complaint as though fully set forth in this paragraph.

103.   A binding contract exists between the plaintiff and NYU, regarding NYU's provision of education to the plaintiff, and the terms and conditions on which the education is provided.

104.   NYU extended an offer to provide an education to the plaintiff subject to certain terms and conditions, in exchange for the plaintiff's selection of NYU as her institute of higher education (as opposed to selecting another university) and in exchange for the plaintiff's payment of tuition for that education. The plaintiff accepted that offer by enrolling at NYU (to the exclusion

of other universities), studying there for since August 2020, and paying the agreed-upon tuition dollars.

105.    The plaintiff's family has already paid a significant portion tuition for the current semester with the balance being claimed due in the beginning of April.

106.    According to the NYU Bursar's refund schedule Plaintiff is past the date where she is eligible for any refund of tuition.

107.    Plaintiff's mother has inquired about refunds, but NYU has not replied to her inquiry.

108.    The various terms of the Student Conduct Policy, COVID-19 Policy and Student Conduct Procedures (Exhibits A, B & D) constitute material terms of the parties' contract.

109.    The Student Conduct Policy(Exhibit "A") Incorporates the COVID-19 Policy and Student Conduct Procedures and expressly provides that "the standards of nonacademic misconduct set forth in this policy are applicable to all undergraduate and graduate students and student organizations at New York University, and all schools and locations, including study away sites, and portal campuses. (id. at I) and grants reciprocal protections to the students on which they are invited to rely in conducting themselves. Thus, the Student Conduct Policy, COVID-19 Policy and Student Conduct Procedures cements a meeting of the minds between the university and its students and establishes a reciprocity of inducement among the parties.

110.    NYU has breached—and continues to breach—the material terms of the contract in at least four ways.

111.    First, NYU purports to exercise jurisdiction wrongfully over a private matter that occurred entirely off-campus, which resulted in no criminal charges, state law or policy or even municipal code violations against the plaintiff.  The Student Conduct Policy notes that The

University shall not use its powers to interfere with the rights of a student beyond the University environment. And further conduct that occurs off campus, online, over social media, or outside the context of a University program or activity, should generally be subject only to the consequences of the applicable authority and/or public opinion, and that NYU's jurisdiction may extend to "conduct a occurring outside the University context which substantially disrupts the regular operation of the University or threatens the health, safety or security of the University community." (Exhibit A at IV) The January 30th dinner at an off campus private apartment attended by the plaintiff was a private gathering that was attended by a number of students under the New York State Guidelines and where all in attendance followed COVID protocols with the exception of the few second it took to take a single photograph. It is not likely to "substantially disrupt the regular operation of the University" nor is it likely to threaten the health, safety, or security of the University community." Further the COVID-19 Policy defines and modifies the Student Conduct Policy as it is much more detailed regarding what activities are permitted and at What location the COVID-19 protocols apply its language therefore controls over the Student Conduct Policy. There is no dispute that the Plaintiff's attending the dinner in question was at any location that is both specifically enumerated in the policy and then further defined. Therefore, NYU's disciplinary action is extra-jurisdictional, and breaches the contract for that reason alone.

112. <u>Second</u>, NYU's Student Conduct Policy guarantees and encourages the right of free association. Plaintiff's attendance at an off-campus dinner in a private residence with a number of people within State guidelines is a valid and permissible exercise of her rights to freedom of association under NYU policy as well as the United States Constitution and New York Constitution. Furthermore, the plaintiff has tested negative for COVID-19 both before and after

the January 30th dinner. Therefor NYU's disciplinary action ignores its promise allow and promote free association and thus breaches its contract with Plaintiff.

113.    Third, NYU's Student Conduct Policy was developed for two reasons, to promote education and procedural fairness to students. Of all the permissible sanctions under the Student Conduct Procedures for this matter NYU imposed the most severe penalty of suspension from the University, not even allowing the Plaintiff the opportunity to continue to take her classes remotely. NYU's sanction in an extra-judicial action is diametrically opposed to the promise that the Student Conduct Policy will promote education. It is inconceivable that suspension from school for an entire semester without being allowed to take classes online can in any way promote education. Thus, NYUs conduct action is a breach of contract with Plaintiff. (See Exhibit A at VII).

114.    Further, the Student Conduct Policy promises Procedural Fairness to students. NYUs application of general policies (Student Conduct Policy) over Specific and more detailed policies and its application of the conduct process to activities at locations that the policy specifically does not cover, and which are specifically excluded by its own definitions is a breach of its contract with plaintiff. (See Exhibit A at VII and Exhibit B)

115.    Fourth, NYU's conduct breaches the Student Conduct Policy, COVID-19 Policy and Student Conduct Procedures and Responsibilities' promise of "procedural fairness to students" NYU apparently accuses the plaintiff of violating the school's COVID-19 Policy incorporated in the Student Conduct Policy to activities off campus as though they were strict, and mandatory polices. See (Exhibits C and K) despite the fact that the polices are worded as suggestive. The application of the polices in this manner is conflicting and contradictory to the plain language of the policy, but the application clearly fall short of NYU's obligation to provide procedural fairness."

116.    The plaintiff has no adequate remedy at law, and the daily harm inflicted by the suspension is irreparable.

117.    The plaintiff has invested years of hard work and significant tuition dollars to get to NYU and to obtain a degree from NYU—an institution that induced her to study there (instead of at other universities) with the promise of a top tier education and prestigious credentials upon graduation.  The direct instruction from the plaintiff's professors—which he is denied during this suspension—is invaluable and irreplaceable.  Indeed, that is precisely what NYU sells. Anyone can read books about science and sociology, and the other subjects of the plaintiff's study.  But the benefit of an *NYU education* is instruction from *NYU faculty*.  The plaintiff is in the formative episode of her undergraduate career (the second semester) and every day lost of NYU faculty interaction is a day she will never get back and a day closer to derailing her educational plans. This is a unique benefit for which money damages are a poor and clumsy substitute.

118.    Accordingly, the plaintiff is entitled to a judgment compelling NYU to specifically perform its obligations under the contract including, without limitation, its obligation to abstain from applying its conduct process without procedural fairness, applying polices to activities that are specifically excluded by said polices, applying general polices over specific polices, applying suggestive polices as mandatory and imposing suspensions where, as here there is no danger to the safety of any person or property on the NYU campus.  NYU must be compelled by judgment to lift the suspension, and other sanctions and allow the plaintiff to resume her online learning and biweekly lab which can be taken in person or remotely online.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Breach of Contract – Money Damages)

119.    The plaintiff restates, realleges and incorporates by reference all of the preceding allegations of this Complaint as though fully set forth in this paragraph.

120.    The defendant's foregoing breaches of contract have injured and continue to damage the plaintiff.

121.    As a result of said breaches, the plaintiff has lost numerous days of instruction from her NYU professors, as well as examination which she will have to try to replace through mitigating instruction elsewhere.  The extent and cost of this harm expands by the day with every lecture that the plaintiff is denied.

122.    Moreover, if NYU's unlawful suspension and sanction of the plaintiff continues much longer, the plaintiff will most likely not graduate as planned at the end of her four years, and will have to repeat the semester at NYU, or matriculate in a different college at this late juncture to complete her education.  Either way, this results in great cost to the plaintiff and financial benefit to NYU.

123.    Accordingly, the plaintiff is entitled to a money judgment against the defendant an amount to be determined at trial, but in no event less than $75,000.00.

### AS AND FOR A THIRD CAUSE OF ACTION
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

124.    The plaintiff restates, realleges and incorporates by reference all of the preceding allegations of this Complaint as though fully set forth in this paragraph.

125.    The law implies a covenant of good faith and fair dealing in the contract between the parties.

126.    The covenant of good faith and fair dealing prohibits a party from doing a thing (or neglecting to do a thing) that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

127.    The defendant's summary and indefinite suspension of the plaintiff—depriving him of the preponderance of professorial instruction during her final undergraduate semester even

before an adjudication of guilt—deprives the plaintiff of the fruits of the contract for which he bargained.

128.    For that separate and distinct reason, the plaintiff is entitled to a judgment of specific performance compelling the defendant to lift the suspension, and/or an award of money damages as alleged above.

**PRAYER FOR RELIEF**

**WHEREFORE**, for the foregoing reasons plaintiff demands judgment against defendants as follows:

A.    A judgment of specific performance against the defendant, compelling the defendant to rescind its suspension and other sanctions of the plaintiff, and restore her access to virtual education and a biweekly in person lab which can also be taken remotely online;

B.    Money damages in an amount to be determined at trial, but in no event less than $75,000; and

C.    The costs of the action, prejudgment interest, and such additional and further relief in favor of the plaintiff as this Court may deem just and proper.

Dated:        March 12, 2021

**E. STEWART JONES HACKER MURPHY, LLP**

By: _____
     Julie A. Nociolo, Esq.
     SDNY Bar Roll No. JN5887

**MUDRICK & ZUCKER, P.C.**

By: _____
     Adam D. Zucker, Esq.
     *Pro Hac Vice Admission Pending*